# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

HUBERT A. COCHRAN,

        Plaintiff,

v.                            CIVIL ACTION NO. 2:09-cv-00204

LEA ANNE COFFMAN, et al.,

        Defendants.

## MEMORANDUM OPINION & ORDER

Pending before the court are the defendants E.S. Coffman's and Lee Anne Coffman's Motion for Summary Judgment [Docket 20]; intervenor-plaintiff Wachovia Securities, LLC's ("Wachovia") Motion for Summary Judgment [Docket 24]; and plaintiff Hubert A. Cochran's Motion for Summary Judgment [Docket 27]. For the reasons discussed below, the plaintiff's and intervenor-plaintiff's motions are **GRANTED**, and the defendants' motion is **DENIED**.

**I. Background**

On March 17, 2006, the instant defendants, Lea Anne and E. S. Coffman, filed suit in the Circuit Court of Kanawha County against their former broker and financial adviser, the instant plaintiff, Hubert A. Cochran, and his employer, the instant intervenor-plaintiff, Wachovia. *See Coffman v. Cochran*, Civil Action No. 06-C-502. By their complaint, the Coffmans alleged that Mr. Cochran unlawfully disclosed their financial information to Cathy Basham and her family.[1] The Coffmans contended that Mr. Cochran's unlawful disclosure violated West Virginia Code Section

---

[1] At the time of the alleged disclosure, Ms. Basham was pursuing a claim against the Coffmans from a vehicular accident; the claim has since settled.

32-2-204, and his securities contracts with the Coffmans. (Compl. [Docket 12, Attach. 1, at 1–5].) The Coffmans also asserted that Mr. Cochran intentionally inflicted emotional distress upon the Coffmans. (*Id.*) Mr. Cochran filed a Motion for Summary Judgment asserting that the case was subject to mandatory arbitration because of the arbitration clauses contained in the securities contracts, but his motion was denied by the Circuit Court of Kanawha County, on July 27, 2007. (Order Den. Mots. Summ. J. [Docket 12, Attach. 1, at 16–21].) On June 25, 2008, the Supreme Court of Appeals of West Virginia denied Mr. Cochran's petition for a writ of prohibition. (Order [Docket 12, Attach. 1, at 22].)

On March 6, 2009, Mr. Cochran brought the pending action in the United States District Court for the Southern District of West Virginia, seeking enforcement of the arbitration clauses in his contracts with the Coffmans. (Compl. [Docket 1].) On March 19, 2009, the Circuit Court of Kanawha County stayed the state proceedings to allow this court to resolve the arbitration issue. On April 30, 2009, I granted Wachovia's motion to leave to intervene as a plaintiff [Docket 9]. On September 1, 2009, I denied the Coffmans' motion to dismiss [Docket 18].

On December 3, 2009, the Coffmans filed a motion for summary judgment [Docket 20]; on December 17, 2009, Wachovia and Mr. Cochran also filed motions for summary judgment [Dockets 24, 27]. The parties' cross-motions for summary judgment are ripe for review by this court.

**II. Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proving an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

### III. Discussion

#### A. *State Court Proceedings*

Earlier, this court noted with disapproval that Mr. Cochran is essentially seeking to appeal an unfavorable state court decision in federal court. (September 1, 2009 Mem. Opinion & Order 10.) I am reluctant to rule on the issue of arbitration, given that the Circuit Court of Kanawha County has already ruled on it. But for the reasons explained in the previous Memorandum Opinion and Order, my reading of applicable law leads me to conclude that I must address the merits of Mr.

Cochran's claim. A broader *Rooker-Feldman* policy would relieve me of this disagreeable task, but the Supreme Court recently reigned in the scope of that doctrine.[2] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). Although a narrow application of abstention principles leads to a direct conflict between state and federal courts, in contravention of long-standing principles of federalism, comity, and finality, I must apply the law as I understand it. I thus turn to the issue of arbitration.

B. *Arbitration*

The Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. § 1, *et seq.*, reflects a strong federal public policy in favor of enforcing arbitration agreements. Indeed, Congress passed the FAA to counteract American courts' "longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The Act demonstrates Congress's "awareness of the widespread unwillingness of state courts to enforce arbitration agreements," and disapproval thereof. *Southland Corp. v. Keating*, 465 U.S. 1, 13 (1984). Under the FAA, arbitration should generally be enforced unless the arbitration agreement is not susceptible of an interpretation that covers the dispute. *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (quoting *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). And "[f]ederal courts will not permit a party to a contract to circumvent an arbitration clause by

---

[2] And as explained in the September 1, 2009 Memorandum Opinion & Order, issue preclusion is not applicable here because there has been no final adjudication on the merits, and the "exceptional circumstances" necessary to justify *Colorado River* abstention are not present. *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Similarly, the "law of the case" doctrine does not apply, since the instant suit is not "the same case" as the state court litigation. *Arizona v. California*, 460 U.S. 605, 618 (1983).

commencing litigation in state court." *Mercury Const. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 941 (4th Cir. 1981) (citations and internal quotation marks omitted).

For a party to compel arbitration under the FAA, it must show: (1) a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction to interstate or foreign commerce; (4) the failure of the parties to arbitrate the dispute. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). In considering these factors, a district court must be "mindful of the 'clear federal directive in support of arbitration.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Hightower v. GMRI, Inc.*, 272 F.3d 329, 241 (4th Cir. 2001)).

Mr. Cochran and Wachovia have shown these four factors. The underlying state court action evidences a dispute between the parties. The arbitration clauses contained in the written agreements at issue cover, inter alia, "any controversy arising out of or relating to" the Coffmans' accounts; "all controversies which may arise . . . concerning any transaction or the construction, performance, or breach of this or any other agreement" between the parties; and "all controversies which may arise between [the parties] concerning any transaction, . . . account, or . . . any . . . agreement." (Compl., Tab 1, Tab 2.) This broad language encompasses the Coffmans' claims of fraudulent disclosure of their financial information. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006) ("We have consistently held that an arbitration clause encompassing all disputes 'arising out of or relating to' a contract embraces 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute.'" (internal

citation omitted)). This transaction bears a relationship to interstate commerce in accordance with the third factor; the parties are of diverse citizenship, and thus their business relationships cross interstate lines. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995) (finding that the interstate commerce requirement must be interpreted broadly, to the full extent of Congress's power under the Commerce Clause). The fourth factor is satisfied because the Coffmans have refused to arbitrate this dispute, as evidenced by their opposition to Mr. Cochran's and Wachovia's summary judgment motions to compel arbitration.

The Coffmans argue that the arbitration clauses contained in the securities agreements they signed should not be enforced. "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." *Wood*, 429 F.3d at 87 (citing *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005)). Therefore, "'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening'" the FAA. *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

The Coffmans assert three reasons why the arbitration clauses should not be enforced against them. First, the Coffmans contend that Lee Anne Coffman never signed an agreement that would require arbitration with Wachovia or with Mr. Cochran as a Wachovia employee. (Defs.' Mem. Supp. Mot. Summ. J. 4-5 [Docket 21].) However, Mrs. Coffman's arbitration agreements with Prudential Securities also bind her to arbitrate with Wachovia, Prudential's successor-in-interest, and with Mr. Cochran as an employee of Wachovia.[3] (*See* Compl., Tab 1.) Indeed, one wonders

---

[3] The record contains two securities agreements with Prudential Securities signed by both Coffmans, two signed by E.S. Coffman only, one signed by Lea Anne Coffman only, and an
(continued...)

why Mrs. Coffman would bring a breach-of-contract claim against Wachovia in state court, if she truly thought she had no contractual relationship to it.

Second, the Coffmans argue that the dispute between the parties does not fall within the language of the arbitration clauses. (Defs.' Mem. Supp. Mot. Summ. J. 5-6.) However, as discussed above, the broad language of the arbitration clauses encompasses the Coffmans' claims against Mr. Cochran and Wachovia.

Third, the Coffmans contend that whether the parties agreed to arbitrate should be determined under the state law of both New York and West Virginia. (Defs.' Mem. Supp. Mot. Summ. J. 7-10.) Citing such authority, the Coffmans assert that they never agreed to compulsory arbitration of this dispute; that Mr. Cochran and Wachovia have waived any rights to seek enforcement of the arbitration clauses by their participation in the litigation thus far; and that the arbitration clauses are contracts of adhesion which accordingly should not be enforced.

While state law principles apply to issues regarding the formation of the contracts, the Coffmans fail to show that the arbitration clauses should not be enforced. Regardless of which state's law is applied, the Coffmans have not cast any serious doubt on the formation of these contracts. There is no evidence to support the Coffmans' suggestion that the arbitration agreements were unconscionable or that the Coffmans' agreement to arbitrate was not entered knowingly and

---

[3](...continued)
agreement with Wachovia signed by E.S. Coffman only. (Compl., Tab 1, Tab 2.) Effective July 1, 2003, Wachovia Securities and the Prudential Securities Division of Prudential Securities, Inc. combined to form Wachovia Securities, LLC. (Compl. ¶ 12; Compl. Tab 4.) Mr. Cochran remained employed by Wachovia after the merger and continued to serve as broker for the Coffmans. (Compl. ¶ 13.)

intelligently.[4] Finally, neither Mr. Cochran nor Wachovia can be said to have waived the right to seek enforcement of the arbitration clauses; the record indicates that they have sought arbitration from nearly the beginning of the state court litigation (*see* Order [Docket 12, Att. 1, at 13] (indicating a hearing was held on the state court defendants' motion to enforce arbitration on May 26, 2006)), and indeed the entire purpose of this federal action is enforce the arbitration agreements.

## IV. Conclusion

For the reasons explained above, the plaintiff's and intervenor-plaintiff's Motions for Summary Judgment [Dockets 24, 27] are **GRANTED** against the defendants to the extent that the plaintiff and intervenor-plaintiff seek an Order compelling arbitration of the defendants' claims. The FAA provides for "orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement." *Gilmer*, 500 U.S. at 25. Pursuant to § 4 of the FAA, 9 U.S.C. § 4, the court **COMPELS** arbitration of the Coffmans' claims against Mr. Cochran and Wachovia, and **DISMISSES** the case from the active docket.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                                                  ENTER:        January 28, 2010

                                                  Joseph R. Goodwin, Chief Judge

---

[4] Furthermore, the Coffmans' citation to *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265 (W. Va. 2002), is unhelpful. The FAA preempts West Virginia law to the extent that the latter would impose heightened requirements on the enforcement of arbitration agreements. *Wood*, 429 F.3d at 88-92; *Merrill Lynch, Pierce, Fenner & Smith v. Coe*, 313 F.Supp.3d 603, 612 (S.D. W. Va. 2004).